

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>TODD KENNETH HOROB,<br><br>Defendant/Movant. | Cause No. CR 08-93-BLG-SPW<br>CV 14-91-BLG-SPW<br><br>ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |

Defendant/Movant Todd Kenneth Horob was convicted of bank fraud, wire fraud, money laundering, and bankruptcy fraud. He is currently serving a sentence of 132 months in prison, to be followed by five years' supervised release. *See* Am. Judgment (Doc. 131) at 2-3.

On July 21, 2014, Horob filed a document titled "Court Fraud." Mot. (Doc. 165) at 1. Shortly thereafter, he filed several other documents with similar titles and contents, all seeking similar relief. *See* Docs. 167, 167-1, 167-2, 167-3, 168, 171, 171-1. Each challenges the validity of Horob's convictions.

On August 6, 2014, the Court gave notice to Horob that it intended to recharacterize his submissions to date as a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. He was advised of the consequences of recharacterization and given an opportunity either to withdraw his submissions, in

order to avoid recharacterization, or to amend his submissions to state any and all additional grounds for relief he would like the Court to consider under § 2255. Order and Notice (Doc. 172 ) at 1-3; *Castro v. United States*, 540 U.S. 375, 377 (2003).

Since August 6, 2014, Horob has filed several additional documents seeking relief (Docs. 173, 174, 177, 177-1, 178, 179, 180, 181, 183, 187, 191), including a § 2255 motion using the Court's standard form (Doc. 175).

As Horob was advised, "[w]here the defendant is still in custody, the only legally cognizable form of relief against a criminal judgment is a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255." Order (Doc. 164) at 2 (citing cases), *quoted in* Order and Notice (Doc. 172) at 1. Consequently, all of Horob's filings are recharacterized as a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255.

## A. The Record

### 1. Background

Nearly all of Horob's submissions repeat his accusation, first made in 2010, that portions of the transcript of his trial were altered or omitted. Since Horob began making it, the accusation has been both insistent and non-specific.[1]

---

[1] Horob cites *United States v. Graham*, 711 F.3d 445 (4th Cir. 2013). In that case, the court reporter did not make a stenographic record in court as the United States played wiretap

2

The following facts are either taken from the record of the case or are facts a district court knows because the Judges of the District Court are responsible for ensuring the integrity of the record, including the integrity of the Court's court reporters. 28 U.S.C. § 753(b).

Horob initially requested an audio tape of his trial in the mistaken belief that every court's record consists of an audio recording. *See* Pro Se Mots. (Docs. 89, 90) (referring to previous requests). This Court has historically used audio recording only for proceedings of minor importance. Court reporters are more reliable. They tell witnesses to speak up or slow down so they can be heard and recorded accurately. They visually monitor the accurate recording of their stenography by their stenographic machine while they are reporting testimony. An audio recording device does not have these qualities. Possibly there are ways for such devices to be used more reliably, but long before Horob's trial, at the time of Horob's trial, and still today, this Court has relied and continues to rely on court reporters.

Because the Court does not use audiotape, Horob was duly informed by court staff that the Court did not make an audio recording of his trial. *See* Pro Se Mots. (Docs. 89, 90). Horob immediately jumped to the conclusion that someone

---

recordings of conversations among co-conspirators as evidence in its case-in-chief. The case did not question the integrity of the transcript.

3

must be hiding something, because "it would be against the law for a court not to have a[n] official record of the proceedings other than a transcript." Pro Se Mot. (Doc. 90) at 1. On the contrary, the law says the court reporter's stenographic notes and transcript *are* the official record of the proceedings. 28 U.S.C. § 753(b); Order (Doc. 91) at 2; *see also, e.g.*, 6 Guide to Judiciary Policy §§ 115.10, 120.10, 120.20.10-.20; *compare id.* § 115.20.

Despite the fact that others with a stake in the accuracy of the transcript – Horob's trial counsel, his new counsel at sentencing,[2] and new counsel appointed to represent him on appeal – did not support Horob's accusation, the presiding judge nevertheless ordered Horob's counsel to look into the matter. Order (Doc. 94). The court reporter who prepared the transcript of Horob's trial habitually makes her own audio recording of proceedings while she stenographically records the proceedings. (This Court has not inquired and does not know whether all court reporters in the District do this or not. It does not matter.) She does so in order to have a back-up for her own stenographic skill. She uses the tape only in the event a question arises in her mind as to the accuracy or loss of any portion of her work product while she is preparing a transcript from her stenographic notation. In other words, the tape is a back-up for the stenographic notations she makes, live and in

---

[2] Horob wrote to Merchant, "I have noticed that everything I told [sentencing counsel] about the court record before it was ever ordered has been altered. It is very easy to figure out what has gone on." Letter from Horob to Merchant (Doc. 96-1 at 5). It is easy to figure that out.

4

person, in the courtroom. The tape and its contents belong to her. She may well record over the same tape many times, and she may well not know whether she has previously used any particular tape. She has no obligation and no reason to make note of the number of times a particular tape has been used. The integrity of the tape is irrelevant to the integrity of the official record. The court reporter's stenographic notes and the transcript she prepares constitute the record.

Despite the limited utility of the audio recording, the court reporter permitted Horob's counsel (his third, who was not present at trial) to listen to her tape and compare it with the portions of the transcript Horob claimed had been altered. He found no errors. Resp. to Order (Doc. 96) at 2. Horob then accused counsel and/or the court reporter of colluding in altering the record. *E.g.*, Letter from Horob to Judge Cebull (Doc. 98-2); Horob Document (Doc. 108) at 1; Horob Aff. (Doc. 167-1 at 3). When the trial judge reviewed counsel's response and the transcript in light of his own recollection of the testimony at trial, he found no evidence of alteration or omission. Horob then accused the trial judge of participating in the fraud. Letter to Clerk (Doc. 121) at 1. When the Court of Appeals rejected Horob's claim, Horob accused the Court of Appeals of participating in the fraud. *See* Mot. (Doc. 162) at 2, *United States v. Horob*, No. 11-30119 (9th Cir. filed Mar. 25, 2014). All of this transpired without Horob producing a shred of evidence, beyond his own say-so, that the integrity of the

transcript is open to any sort of question.

Following the review and re-certification of the accuracy of the transcript by the judge who presided over trial, *see* Fed. R. App. P. 10(e); Order (Doc. 114), Horob argued on appeal that the judge erred by failing to hold an evidentiary hearing. The Court of Appeals found no error in denying a hearing. The court said:

> A trial court's factual finding that transcripts are accurate and complete cannot be disturbed unless clearly erroneous. Assuming there were omissions in the transcripts, appellant cannot prevail without a showing of specific prejudice. As directed by the district court, Horob's former counsel compared the trial transcript to audio recordings and confirmed that the transcript was accurate. In addition, the court independently confirmed the transcripts' accuracy. Moreover, Horob has not identified any alleged substantive mistakes in the transcript that might have had an impact on his conviction or appeal.

*United States v. Horob*, 735 F.3d 866, 872 (9th Cir. 2013) (internal citations, quotation marks, and brackets omitted).

### 2. Legal Analysis

Horob's post-judgment claims to discovery and to relief sound no new note. He continues to claim that he remembers trial testimony different from that reflected in the official record. *But see* Mot. § 2255 (Doc. 175) at 2 ¶ 1 (in response to question asking what he was convicted of, Horob responds "I, Todd Horob do not remember and have no records."). Horob's accusations have eschewed specificity, *see* Order Affirming Court Reporter's Transcript Certifications (Doc.

6

114) at 3 n.1, those which are specific are wrong, *see id.* at 4-6, and many are downright ridiculous, *see id.* at 6-11. These characteristics are shared by all of his recent submissions.

This Court has carefully reviewed the entire matter. There is nothing to Horob's accusations. "The trial is not going on trial." *Id.* at 15. Whether seeking discovery or relief on the merits, all claims relating to the integrity of the Court's record are denied for lack of merit.

## B. Prosecutorial Misconduct in Grand Jury Proceedings

Horob contends that the United States "forced" his wife to testify before the grand jury, in violation of her right to assert a spousal privilege to refuse to testify adversely to him. *E.g.*, Mot. § 2255 (Doc. 175) at 4 ¶ 5A; Mot. to Transport (Doc. 177 at 3); Teresa Horob Aff. (Doc. 177-1, 178 at 3) at para. 3.[3] Although Horob relies only on Teresa's spousal privilege, there are two kinds of privilege between persons who are married. "Spousal privilege" may only be asserted by the witness spouse, but it applies to all adverse testimony. *Trammel v. United States*, 445 U.S. 40, 53 (1980). "Marital communications privilege" can be asserted by the

---

[3] In addition to stating that she "cannot be forced to indict my husband," Teresa Horob's purported affidavit states that she was "ordered to leak Attorney-Client privileged legal advice from attorney James Patten of Billings." Teresa Horob Aff. (Docs. 177-1, 178 at 3) at 1 paras. 2 & 3; *see also* Mot. for New Trial (Doc. 174) at 2. Teresa Horob was not a party to the bankruptcy proceedings in which Mr. Patten represented Horob. She did not testify at trial, and at grand jury, she made no statement purporting representing legal advice or any communication between Horob and Patten.

7

defendant-spouse, but it applies only to communications made in the course of the marriage and outside the presence of any third party. *See generally SEC v. Lavin*, 111 F.3d 921, 925 (D.C. Cir. 1997), *cited in United States v. Griffin*, 440 F.3d 1138, 1143-44 (9th Cir. 2006). The Court has considered whether Horob may have a claim under either form of privilege.

Dismissal of an indictment on the basis of prosecutorial misconduct is a "disfavored remedy. . . . especially . . . when sought *after* the conclusion of trial." *Territory of Guam v. Palomo*, 35 F.3d 368, 371 (9th Cir. 1994), *overruled on other grounds by United States v. Galindo-Gallegos*, 255 F.3d 1154 (9th Cir. 2001)) (emphasis in *Palomo*). At this point, of course, we are *way after* the conclusion of trial. But if the entire proceeding is marred at the outset by serious prosecutorial misconduct, mere passage of time does not cure the defect. On the other hand, "dismissal is appropriate only when 'the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair.'" *Palomo*, 35 F.3d at 371 (quoting *Territory of Guam v. Muna*, 999 F.2d 397, 399 (9th Cir. 1993)).

The question, therefore, is whether the structural protections to which Horob was entitled in the grand jury proceedings were fatally undermined by Teresa's testimony, either because it was given in violation of her right to assert the spousal privilege, or because she testified to a privileged marital communication. To

answer that question, the Court ordered the United States to complete the record by filing the transcript of all grand jury testimony in Horob's case. The United States complied on October 3, 2014, and again on October 27, 2014.[4]

### 1. Spousal Privilege

At the beginning of her testimony, Teresa was specifically advised she could consult an attorney. Teresa Horob Grand Jury Tr. (Doc. 184-3) at 4:21-6:12. It is doubtful, therefore, that Horob could build a claim for relief based on Teresa's alleged lack of knowledge about spousal privilege. But even assuming Horob has legal standing to assert a fundamental defect in the grand jury proceedings on the grounds that Teresa did not know she could assert spousal privilege, Horob was not prejudiced.

Teresa was not the only witness to testify as to one or more counts or even one or more elements found by the grand jury. Her testimony was relevant only to Count 6 of the Indictment, the charge of bankruptcy fraud, and only to some preferential transfers. FBI Agent Teeling testified about Count 6 as well. His

---

[4] In compliance with Rule 7(c) of the Rules Governing § 2255 Proceedings, Horob was given an opportunity to respond to the United States' filing of the grand jury transcripts. He did so on November 6, 2014. He claims he could have shown Agent Teeling lied if he had obtained access to the grand jury transcripts. He also claims his attorney lied to him by saying that James Johnson, Horob's former business partner, testified at grand jury. Resp. (Doc. 191) at 1-2. These allegations are immaterial. Horob had no right to cross-examine Teeling in the grand jury proceedings, and Teeling did not testify at trial. Whether Horob was accurately advised about who testified at grand jury has no bearing on anything. *See generally United States v. Williams*, 504 U.S. 36, 45 (1992); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 260-61 (1988); *Costello v. United States*, 350 U.S. 359, 363 (1956).

testimony was sufficient to show probable cause for the charge of bankruptcy fraud, and it established not only preferential transfers but also Horob's concealment of assets and his wholesale fabrication of a document.[5] *See, e.g.*, Teeling Grand Jury Tr. 1 (Doc. 184-1) at 3:15-15:17; Teeling Grand Jury Tr. 2 (Doc. 184-2) at 43:1-44:8, 50:3-56:11, 56:12-57:18; *see also* Trial Br. (Doc. 14) at 15.

This claim is denied for lack of merit.

### 2. Marital Communications Privilege

Very little of what Teresa said in grand jury could have been protected marital communications. Teresa testified that two checks made out to her were payment for pipe she sold to the drafters of the checks. Teresa Horob Grand Jury Tr. (Doc. 184-3) at 10:6-12:4. (Agent Teeling testified that the persons who wrote the checks said otherwise. Teeling Grand Jury Tr. 1 at 3:21-6:20.) This testimony involved no confidential communication between the Horobs and so is not protected by the marital communications privilege. *See Griffin*, 440 F.3d at 1143.

As to the checks drafted by Horob on the day he filed for bankruptcy, Teresa testified that she was not present when he wrote them. She could only say the signature appeared to be his. Teresa Horob Grand Jury Tr. at 12:5-14:4. That

---

[5] Horob's forging of Gerber's signature on a document Horob created out of whole cloth was the basis of Count 7 of the Indictment, charging aggravated identity theft, but it was also relevant evidence of bankruptcy fraud.

information is not a privileged communication.

Teresa also testified that she wrote several checks on March 24, 2006, to pay various people whom she knew to be connected with Todd's business. Based on previous transactions, she assumed he was paying for cattle, but she did not know that to be true. *Id.* at 14:8-19:9. She testified that she did not know Horob was declaring bankruptcy on March 24, 2006. *Id.* at 15:11-13. None of this information was a privileged communication.

Teresa testified to only one communication that could have been privileged: she said she wrote checks on March 24, 2006 – the day Horob filed for bankruptcy – because Horob told her to do so. Teresa Horob Grand Jury Tr. (Doc. 184-3) at 14:8-22, 16:12-21, 17:13-18:9; *United States v. McCown*, 711 F.2d 1441, 1452-53 (9th Cir. 1983). This testimony did not undermine the structural protections of grand jury proceedings. Regardless of anything Horob said or did not say to his wife, Agent Teeling testified that the payees told investigators the checks were payment for items related to Horob's business. Again, Horob's right to have a grand jury decide whether there was probable cause to charge him was not undermined by the prosecutor's calling Teresa as a witness.

This claim is denied for lack of merit.

### C. Errors by Counsel

#### 1. Failure to Consult

11

Horob contends that "counsel" – there were several – lied, did not contact him, were dismissed or fired by him, and did not "notice" him. He states he was "kept in the dark so court fraud would not get entered for the record." *E.g.*, Mot. § 2255 (Doc. 175) at 4-5 ¶¶ 5A-C. As explained, Horob's reference to "fraud" is specious. He alleges no other way in which he was prejudiced by counsels' alleged failure to consult with him. Consequently, these allegations do not meet the standards of *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). *See also Morris v. Slappy*, 461 U.S. 1, 14 (1983). Any claim of ineffective assistance of counsel based on these facts is denied.

### 2. Advice from Bankruptcy Attorney and Trial Counsel's Defense

Horob contends that his bankruptcy attorney, James A. Patten, gave him "misleading advice" and "deliberately misled Todd Horob to transfer of money." Mot. for Transport (Doc. 177 at 10). He also claims that Patten "deprived Todd Horob of the opportunity to reserve rights to attorney client privileged legal advice." *Id.*

At trial, Horob described at length the advice Patten gave him. 3 Trial Tr. (Doc. 78) at 439:6-440:19, 456:24-465:3, 481:9-483:21. But in cross-examination, the United States showed that Horob personally lied in a deposition in the bankruptcy proceedings. *Id.* at 483:22-484:8, 488:2-489:11, 491:6-493:8. Among Horob's knowingly untrue representations of fact were his claims to have

12

purchased, moved, and sold 775 cows that never existed. Reviewing several of Horob's lies shown in the preceding days of testimony, the prosecutor's cross-examination concluded:

> Prosecutor: If the cows in the borrowing base reports are inflated and Wells Fargo knows it and Todd Gerber knows it, why do you have to ask Mr. Gilland to lie?[6]
>
> Horob: I didn't ask Mr. Gilland to lie.
>
> Prosecutor: So he's mistaken?
>
> Horob: I did not ask Mr. Gilland to lie.
>
> Prosecutor: Why did you ask Mr. Lunderby to lie?
>
> Horob: Because I was told by Todd Gerber that we needed to show some cattle at that feedyard because they were on a borrowing base report.
>
> Prosecutor: So Todd Gerber told you to do it?
>
> Horob: Yes.
>
> Prosecutor: And you asked Mr. Lunderby to lie?
>
> Horob: I asked him – I said, "My banker says it's okay. He said, 'Go ahead.'"
>
> Prosecutor: Why did you submit false brand certificates?
>
> Horob: I didn't.
>
> . . .

---

[6] Gilland, Lunderby, the brand inspectors, and Gerber had already testified at trial.

| | |
|---|---|
| Prosecutor: | So according to your testimony, your attorney told you to put false statements on your bankruptcy petition – |
| Horob: | I'm not saying that he said put false statements on there. He said do it that way because of the way the money was paid. |
| Prosecutor: | And Mr. Gerber told you to put false statements on the borrowing base report? |
| Horob: | He told me that I had to put 775 head of cows down on the borrowing base report. |
| Prosecutor: | And you signed each of those documents with your name, didn't you? |
| Horob: | Yes. I'd want to look at them again. |
| . . . | |
| Prosecutor: | Your entire testimony is, "They told me to do it," is it not? |
| Horob: | Correct. |
| Prosecutor: | And you did it anyway, and you knew it wasn't true? |
| Horob: | I knew it was wrong. |

3 Trial Tr. at 493:25-495:24.

Horob now contends that his wife Teresa (who did not know Horob was declaring bankruptcy, *see* Teresa Horob Grand Jury Tr. at 15:11-13) and attorney Gary Jackson were witnesses to bankruptcy attorney Patten's "bad legal advice." Mot. to Transfer (Doc. 177 at 10). Horob also accuses trial counsel of "helping the

14

prosecution to convict" him by not calling Teresa and Jackson as witnesses to corroborate Horob's account of Patten's advice. But even if the witnesses had testified precisely as Horob claims they would, their testimony could not create a reasonable probability of acquittal. *Strickland*, 466 U.S. at 694. Horob himself testified under oath "I knew it was wrong" to lie in all the various ways in which he lied. Advice of counsel is available as a defense only when the defendant follows counsel's advice "in good faith." 9th Cir. Jury Instr. No. 5.9 (2003). When Horob said he "knew it was wrong," he foreclosed any good-faith defense.[7]

The facts Horob alleges do not support an inference that he was prejudiced by trial counsel's not calling Teresa Horob and Gary Jackson to testify about Patten's advice. Horob's claim that Patten somehow "deprived" him of "the opportunity to reserve rights to attorney client privileged legal advice" is not comprehensible. Any claim of ineffective assistance of counsel based on these facts is denied.

### D. Other Submissions

Horob represents that a judge in a case in North Dakota held that a particular "buyer bill," which was also involved in this case, was not counterfeit. Mot. for

---

[7] Although Government Exhibits 40 and 41 were not introduced at trial, they tend to show why Horob had little choice but to testify that he knew he had lied. The exhibits consist of an affidavit and plea agreement underlying Horob's conviction in state court. *See* Government Exhibits 40 and 41 (Docs. 177 at 12, 177-1 at 10-17). Had Horob claimed he did not lie, or did not know he lied, those exhibits would have been admissible impeachment evidence.

15

Transport (Doc. 177 at 9). Horob is referring to a case litigated before the Honorable Daniel L. Hovland in the District of North Dakota. Chief Judge Hovland held that "loaning $950,000 on the basis of a faxed and unsigned 'Buyer's Bill' is not the type of risk for which the 'Counterfeit Share Draft, Check or Securities' provision of the bond triggers coverage" because "a single phone call by Dakota West to Lake Region Livestock before advancing any loan funds to H&J Livestock would have revealed that H&J Livestock had never purchased any steers." Order (Doc. 29) at 11, *Dakota West Credit Union v. CUMIS Ins. Soc'y, Inc.*, No. 1:07-CV-16 (D.N.D. Jan. 24, 2008); *see also* Mot. Supp. (Doc. 177-1 at 3). The judge's decision that Dakota West's insurer was not liable to it does not exculpate Horob for misrepresentations he made to Dakota West. Nor does it constitute a finding or conclusion that Horob's buyer's bill was genuine. Any claim arising from Judge Hovland's Order is denied.

In some instances, Horob seeks to impeach both the record and the facts underlying his convictions by claiming something opposite is true. He says he did not testify about borrowing base reports. He did. *Compare* Supp. (Doc. 181 at 1), *with* 3 Trial Tr. at 438:10-439:5, 441:24-442:11, 476:25-478:24, 482:18-25, 493:20-495:10. The reports were introduced into evidence, and their meaning and importance were explained by other witnesses. *E.g.*, 1 Trial Tr. at 76:10-77:15, 97:6-100:3. Any claim based on these facts is denied.

Contrary to Horob's allegation, the parties did indeed stipulate on the record that Horob used a fax machine to send brand inspection certificates to Wells Fargo. *Compare* Doc. 177 at 11 *with* 1 Trial Tr. at 86:19-87:2. Any claim based on these facts is denied.

Even if Horob testified in deposition in another proceeding that the signature and handwriting on the reports were not his (Doc. 181 at 2), his testimony does not conclusively establish that the signature and handwriting were not his or that the information did not come from him, *compare, e.g.*, 3 Trial Tr. at 400:16-402:3 *with id.* at 479:6-480:2. Any claim based on these facts is denied.

Horob apparently also claims Government Exhibits 40 and 41 (Docs. 177 at 12, 177-1 at 10-17), which were filed in criminal proceedings in state court, are not genuine. The point is moot because they were not admitted into evidence at trial. Any claim based on these facts is denied.

Horob's role in falsifying brand inspection certificates was aired at trial. The jury believed the inspectors. *Compare* Doc. 177 at 11 *with* 2 Trial Tr. at 199:1-226:2 (four inspectors identify their own genuine certificates and distinguish Horob's falsified ones). Any claim based on these facts is denied.

**E. Rule 60 and Motion for New Trial**

Horob raises no new claims in his requests for relief under Fed. R. Civ. P. 60 or Fed. R. Crim. P. 33. As an independent basis for denying those requests for

relief, however, the requests are procedurally inapposite. Fed. R. Civ. P. 60 does not apply against criminal judgments. Fed. R. Civ. P. 1. A motion for new trial must be made, at the latest, "within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). Horob was found guilty on February 12, 2009, well over three years ago. Relief is not available under Fed. R. Civ. P. 60 or Fed. R. Crim. P. 33.

### F. Further Proceedings in This Court

The Court has determined that Horob is not entitled to relief on the merits of his claims. It has not disposed of any claims in the § 2255 motion on a procedural basis. If Horob is dissatisfied with the outcome of his § 2255 proceeding, his recourse is to appeal the denial of his motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Any notice of appeal must be filed within 60 days of the date of this Order. Fed. R. App. P. 4(a)(1)(B)(i); *United States v. Angelone*, 894 F.2d 1129, 1129-31 (9th Cir. 1990).

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

18

district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Horob's allegations meets even the relatively low threshold of § 2253(c)(2). His attacks on the integrity of the record are rooted in misconception and elaborated in desperation. Although Teresa Horob's grand jury testimony may have been protected in a minimal degree by spousal privilege (had she asserted it), her testimony rose nowhere near the level of undermining the structural protections of the grand jury. Horob fails to identify any respect in which counsel's performance prejudiced him. Horob's other claims either attempt to contradict the record, seize on something irrelevant to his case, or attempt to relitigate a factual issue that was litigated at trial. Moreover, Horob was twice advised that he must bring all claims in his first § 2255 motion. *See* Order (Doc. 164) at 2-3; Order and Notice (Doc. 172) at 1-2. *Gonzalez v. Thaler*, \_\_ U.S. \_\_, 132 S. Ct. 641, 648 (2012). No reasonable jurist would find a good reason to encourage further proceedings. A COA is denied.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Pursuant to the Orders of July 5, 2011 (Doc. 136), April 14, 2014 (Doc.

164), and August 6, 2014 (Doc. 172), the Court has not considered and will not consider any document submitted by Horob before his conviction became final on the expiration of his time to file a petition for writ of *certiorari*.

2. Pursuant to the Order of August 6, 2014 (Doc. 172), Horob's submissions after his conviction became final (Docs. 167, 167-1, 167-2, 167-3, 168, 171, 171-1, 173, 174, 175, 177, 177-1, 178, 179, 180, 181, 183, 186, 187, 188, 191) are RECHARACTERIZED as a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255.

3. Horob's § 2255 motion is DENIED for lack of merit.

4. A certificate of appealability is DENIED.

5. The Clerk of Court shall ensure that all pending motions in this case and in CV 14-91-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Horob.

DATED this 1st day of December, 2014.

Susan P. Watters
United States District Court